IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA F. WEARY, Ed. D., | : | No.  4:CV 05-2426 |
| | : | |
| Plaintiff, | : | Judge Jones |
| | : | |
| v. | : | |
| | : | |
| WEST PERRY SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**March 9, 2007**

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

Pending before the Court is Defendant West Perry School District's Motion for Summary Judgment ("the Motion") (doc. 22) filed on November 1, 2006.

For the following reasons, the Motion will be granted and judgment will be entered in favor of the Defendant.

**PROCEDURAL HISTORY**:

Plaintiff Barbara Weary ("Plaintiff" or "Dr. Weary") commenced this action by filing a complaint (doc. 1) on November 22, 2005.  Defendant West Perry School District ("Defendant" or "West Perry") filed an answer (doc. 11) on February 13, 2006.

In Count I of the complaint, Plaintiff claims that she was denied promotions

1

on the basis of her age and gender in violation of the Pennsylvania Human

Relations Act ("PHRA").  In Count II of the complaint, Plaintiff alleges that she

was denied promotions on the basis of her age in violation of the Age

Discrimination in Employment Act ("ADEA").  In Count III of the complaint,

Plaintiff claims she was denied promotions on the basis of her gender in violation

of Title VII of the Civil Rights Act of 1964 ("Title VII").

    Following the close of discovery, West Perry filed the instant Motion,

which has been fully briefed by the parties.  The Motion is therefore ripe for our

review.

## STANDARD OF REVIEW:

    Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

FED .R. CIV .P.  56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335,

340 (3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  Young v. Quinlan, 960 F.2d 351,357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences which a fact finder could

draw from them.  See Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d

Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. <u>Id</u>. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. <u>Celotex Corp.</u>, 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." <u>Pastore v. Bell Tel. Co. of Pa.</u>, 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted). However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir.

1992), <u>cert. denied</u>, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)(emphasis in original). "As to materiality, the substantive law will identify which facts are material." <u>Id</u>. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id</u>.

## **FACTUAL BACKGROUND**:

This action arises out of a denial by West Perry to extend an offer of employment as Assistant Principal to Plaintiff, a female in her sixties, following an application and interview process.  The position was ultimately filled by a younger, aged twenty five to thirty years old,  male candidate.

Plaintiff began her employment at West Perry in 1985 as a "TELLS teacher," working with students who were deficient in both math and reading at the third, fourth, fifth and sixth grade level.  (Rec. Doc. 21 at ¶8).[1]  At this time, Dr. Caldwell was acting as the Superintendent at West Perry.  Dr. Caldwell was

---

[1] Where a factual averment is undisputed by the parties, we shall only refer to the Defendant's Statement of Undisputed Facts in Support of its Motion for Summary Judgment. (Rec. Doc. 21).

succeeded by Dr. Cleland, who was ultimately succeeded by Dr. Hoover in November 2002.  (Rec. Doc. 21 at ¶9-10).

Dr. Hoover initially began his employment at West Perry in 1992 as Assistant Superintendent, a position he held from 1992-1998.  Thereafter, he was re-employed at West Perry in 2003 as Superintendent.  (Rec. Doc. 21 at ¶11-12). During his employment at West Perry, Dr. Hoover gave Plaintiff letters of commendation recognizing her achievements at the school district, although Plaintiff notes that some of these letters were "pro forma responses" to participation in specific voluntary events.  (Rec. Doc. 21 at ¶14; 27 at 13).

Defendants allege that Dr. Hoover encouraged Plaintiff to apply for many available positions over the years, and that Plaintiff applied for and received offers for several, but ultimately declined.  (Rec. Doc. 21 at ¶14).  Plaintiff alleges that the only position she declined was a lateral transfer to the middle school reading teacher position, which would have removed her from the applicant pool for the Assistant Principal promotion.  She alleges that any suggestion that she "rebuffed multiple efforts to advance her career is patently false."  (Rec. Doc. 21 at ¶14).

For the past ten years, West Perry High School's administration has been structured in one of two ways, operating with one high school Principal and either: (1) two Assistant Principals; or (2) one Assistant Principal and one Dean of

Students. (Rec. Doc. 21 at ¶15).  During 2003, West Perry was unsure of which

structure it wanted and, therefore, sought to fill the position of Assistant Principal

or Dean of Students.  (Rec. Doc. 21 at ¶16).  West Perry posted an announcement

regarding the alternate positions on its bulletin board.  (Rec. Doc. 21 at ¶17).  On

July 6, 2003, Plaintiff, in response to the posting, wrote a letter to Dr. Hoover,

applying for the Assistant Principal position.  (Rec. Doc. 21 at ¶18).

Defendant alleges that Plaintiff was only interested in the Assistant Principal

position because she believed that she was "overqualified for the dean of students

position" because her credentials were "beyond a dean of students position."  (Rec.

Doc. 21 at ¶19).  Plaintiff denies the Defendant's allegation, explaining that there

was no separate application process for the two aspects of the posted position, and

she was never asked to make a choice as to which she would apply.   (Rec. Doc. 27

at ¶19).

Defendant alleges that in order to fill the position of Assistant Principal or

Dean of Students, a decision-making committee was created.  (Rec. Doc. 21 at

¶21).   The committee consisted of Larry Redding, the high school Principal; Sherri

Connell, Assistant Principal; Joseph Burroughs and David Bandura, high school

teachers and Superintendent Hoover.  (Rec. Doc. 21 at 22).  Plaintiff alleges that

Dr. Hoover controlled the entire selection process, alleging that Dr. Hoover

empaneled a committee to "ratify his choices."  (Rec. Doc. 27 at ¶21).

Approximately twenty four applicants responded to the job posting.  Out of the twenty four applicants (which included both male and female candidates), only six were selected for an interview.  Plaintiff was one of the six applicants selected for an interview.  The decision to interview Plaintiff was made by Dr. Hoover. (Rec. Doc. 21 at ¶¶23-26).

Defendant alleges that at no time during the interview process, or in the discussions thereafter, were the applicants' genders or ages factored into the committee members' decisions, and each committee member based his or her decisions on a subjective interpretation of each applicant's human relations skills, enthusiasm, discipline, knowledge or instructional planning, background in assessment and leadership skills.  (Rec. Doc. 21 at ¶¶28-29).  Plaintiff contends that Dr. Hoover manipulated the process and that he had a discriminatory animus towards Plaintiff.  Plaintiff alleges that a comparison of the rankings and the relative qualifications of the candidates demonstrates that the rankings do not reflect relative qualifications and that Plaintiff had been dismissed from the evaluation process before relative qualifications were considered.  (Rec. Doc. 27 at ¶28).

None of the committee members ranked Plaintiff as a top candidate for the

position.  Plaintiff was ranked among the bottom (below the top four candidates) by each committee member.  (Rec. Doc. 21 at ¶¶30-31).  Defendant alleges that one of the committee's chief concerns contributing to Plaintiff's low ranking was that Plaintiff's primary experiences during her career were at the elementary level with younger children, while the other applicants had more experience with secondary education.  (Rec. Doc. 21 at ¶32).  Plaintiff denies this rationale as "patently pretextual," arguing that she had extensive experience with older students through her ongoing involvement as an instructor at the local correctional facility. She further argues that the selected candidate had far less experience with secondary education than other candidates not chosen.  (Re. Doc. 27 at ¶32).

Following the interviews, the committee offered the position of Dean of Students to Shane Miller, who the committee unanimously ranked first among the six applicants.  (Rec. Doc. 21 at ¶35).  Mr. Miller had accepted a position with another school district in the interim and therefore declined the offer.

Defendant alleges that the position was then offered to the committee's unanimously ranked second choice, Christopher Rahn who ultimately accepted the offer. (Rec. Doc. 21 at ¶¶36, 38).   Plaintiff alleges that the ranking sheets do not reflect a unanimous ranking of second, but rather reflect a process wherein Dr. Hoover convinced members to change rankings so that Mr. Rahn ended up as

second choice.  (Rec. Doc. 27 at ¶36).  Defendant alleges that it was "normal

procedure" at West Perry to offer a position to the next ranked candidate if a higher

ranked candidate turned down the offer.  (Rec. Doc. 21 at ¶37).   Plaintiff alleges

there is no evidence that this was the "normal procedure," and that Dr. Hoover

manipulated the hiring process.  (Rec. Doc. 27 at ¶37).

Defendant alleges that the committee felt that Mr. Rahn has the best

interview next to top-ranked Mr. Miller.  (Rec. Doc. 21 at ¶39).  Plaintiff alleges

that the interview notes do not support the contention that Mr. Rahn was the

second-best interview.   (Rec. Doc. 21 at ¶39).  Defendant alleges that Mr. Rahn

asked "more knowledgeable" and "more detailed" questions and that his

background and answers to interview questions demonstrated that he possessed

"strong relationship[s] with students and the potential to exhibit a trait which is

rare in Assistant Principals and Deans of Students – being a good disciplinarian,

but at the same time being positive with the student body." (Rec. Doc. 21 at ¶¶40-

41).  Plaintiff alleges that Dr. Hoover had a personal desire to mentor Mr. Rahn,

and that he advocated for Mr. Rahn in the ranking process.  Plaintiff further alleges

that the Defendant's alleged reasons for Mr. Rahn's selection are pretextual.  (Rec.

Doc. 27 at ¶¶40-41).

In May 2005, Plaintiff became the acting Principal of Blain Elementary

School. (Rec. Doc. 21 at ¶42).   Dr. Hoover was the individual who made the sole

decision to promote Plaintiff to this position.  (Rec. Doc. 21 at ¶43).  Plaintiff notes

that by May 2005, the instant lawsuit was pending and since she had previously

served in the same capacity under similar circumstances, it would have been

"strange indeed had she not been selected for the short term posting."  (Rec. Doc.

27 at ¶43).

In June 2005, Plaintiff decided to retire from West Perry at age sixty six.

(Rec. Doc. 21 at ¶44).  Plaintiff alleges that she retired when it became apparent

that "all hope for fair consideration for appropriate advancement had been

extinguished."  (Rec. Doc. 27 at ¶44).

Plaintiff alleges that she first felt a discriminatory animus against her by Dr.

Hoover in 1995, after she wrote a research paper discussing gender differences in

management styles.  At that time, she was serving as an intern for Dr. Hoover.

(Rec. Doc. 21 at ¶¶50-51).  Plaintiff alleges that Dr. Hoover disagreed with her

findings and thereafter, his regard for her and treatment of her changed.  (Rec. Doc.

27 at ¶52).

**<u>DISCUSSION</u>**:

As noted by the parties, it is well-settled that claims brought pursuant to the

PHRA, Title VII and the ADEA are analyzed under the burden-shifting analytical

framework established by the Supreme Court in <u>McDonnell Douglas Corp. v.</u>

<u>Green</u>, 411 U.S. 792 (1973).

As the United States Court of Appeals for the Third Circuit  has noted:

Briefly summarized, the <u>McDonnell Douglas</u> analysis proceeds in
three stages.  First, the plaintiff must establish a *prima facie* case of
discrimination.[2]  If the plaintiff succeeds in establishing a *prima facie*
case, the burden shifts to the defendant to articulate some legitimate,
nondiscriminatory reason for the [employment action].[3]  Finally,
should the defendant carry this burden, the plaintiff then must have an
opportunity to prove by a preponderance of the evidence that the
legitimate reasons offered by the defendant were not its true reasons,
but were a pretext for discrimination.

<u>Jones v. School Dist. of Philadelphia</u>, 198 F.3d 403, 410 (3d Cir. 1999)(citing

<u>McDonnell Douglas</u>, 411 U.S. at 802).

As we stated in <u>Willis v. American Customer Care</u>, No. 4:04-cv-2606, Slip

Copy, 2006 WL 3042982, *5 (M.D. Pa. 2006)(Jones, J.):

[O]nce Plaintiff has established a *prima facie* case, the "burden
of production shifts to the defendant to 'articulate some legitimate,
nondiscriminatory reason for the employee's [termination]."  <u>Fuentes</u>,
32 F.3d at 763 (quoting <u>McDonnell Douglas</u>, 411 U.S. at 802).  "The
employer satisfies its burden of production by introducing evidence
which, taken as true, would permit the conclusion that there was a
nondiscriminatory reason for the unfavorable employment decision."
<u>Id</u>. (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 508 (1993)).

---

[2] The plaintiff bears the burden of production to establish the *prima facie* case.  <u>See</u>
<u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).

[3] The defendant bears the burden of production to establish a legitimate,
nondiscriminatory reason for the adverse employment action.  <u>See</u> <u>Fuentes</u>, 32 F.3d at 763.

11

"The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the Plaintiff." Id. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

"Once the employer answers its relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production now rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." Id. "[T]he plaintiff must convince the factfinder 'both that the reason was false, and that discrimination was the real reason.'" Id. (quoting Hicks, 509 U.S. at 515-516). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post-hoc fabrication or otherwise did not actually motivate the employment action." Id. at 764 (internal citations omitted).

"To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer . . . [T]he non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. at 765 (internal citations omitted).

Furthermore, if the defendant sustains his burden, a plaintiff may survive summary judgment "by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reason; or (2)

believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." <u>Dunleavy v. Montville Twp.,</u> 2006 U.S. App. LEXIS 21095, **4 (3d Cir. Aug. 17, 2006)(citing <u>Stanziale v. Jargowsky,</u> 200 F.3d 101, 105 (3d Cir. 2000)).

The Defendant concedes, and we agree, that the Plaintiff has proven a *prima facie* case for both age and gender discrimination pursuant to <u>McDonnell Douglas</u>. Accordingly the dispositive issue before the Court is whether Plaintiff has provided sufficient evidence to sustain an inference that the Defendant's articulated legitimate, non-discriminatory reason for its decision not to promote Plaintiff is a pretext for discrimination.

West Perry's legitimate non-discriminatory reason is articulated as follows:

West Perry originally sought to fill the position of Assistant Principal or Dean of Students and created a decision-making committee to fill the position. Following interviews, West Perry decided to hire a Dean of Students and not an Assistant Principal. West Perry then decided to award the position of Dean of Students . . . to Mr. Rahn, the candidate unanimously ranked second by the committee. The job was offered to Mr. Rahn after Mr. Miller, the candidate unanimously ranked first by the committee, turned down the offer. Plaintiff was not even ranked among the top four applicants by the committee for numerous reasons, including Plaintiff's lack of experience in secondary education.

(Rec. Doc. 23 at 19). To be sure, West Perry reiterated in its Reply Brief that its legitimate non-discriminatory reason for not selecting Plaintiff for the Assistant

13

Principal/Dean of Students position was Plaintiff's lack fo secondary education experience.  (Rec. Doc. 33 at 7).

To frame her argument that she has provided sufficient evidence to raise an inference of pretext and therefore survive summary judgment, Plaintiff cites heavily from our recent decision in <u>Willis v. American Customer Care</u>, 4:04-cv-2606.  In <u>Willis</u>, we denied summary judgment on the plaintiff's racial discrimination claim, holding that a genuine issue of material fact remained as to whether the defendant's proffered legitimate reason was pretext.  In particular, we found it troubling that plaintiff's race was a stated topic of discussion among the relevant decisionmakers, and found the weight of the evidence to balance in favor of denying summary judgment.

Although Plaintiff attempts to compare her case to <u>Willis</u>, the two are clearly distinguishable.  The evidence before the Court in <u>Willis</u> revealed that the plaintiff's race was discussed by the decisionmakers – evidence which we felt sustained the plaintiff's burden of production regarding pretext.  In this matter the Plaintiff does not have the benefit of any evidence that either her age or gender was discussed or highlighted by the relevant decisionmaker(s), but still attempts to compare her case to <u>Willis</u>.  As a result, we do not find the comparison helpful.

Plaintiff asserts that Dr. Hoover controlled the reins of the committee that

14

decided not to offer her the position of Assistant Principal/Dean of Students. She argues that Dr. Hoover, motivated by a discriminatory animus against her, "manipulated" the hiring process and decision. Plaintiff submits that Dr. Hoover's discriminatory animus against her infected the entire interview and hiring process, making the decision not to hire her for Assistant Principal or Dean of Students a discriminatory employment action.

To support her argument that Dr. Hoover maintained a discriminatory bias against her based upon her age and gender, Plaintiff points to Dr. Hoover's disagreement with Plaintiff's position in a research paper she wrote seven years prior to the complained of employment action, discussing the topic of gender and management styles. Plaintiff also testified in her deposition that she had a "general feeling of discrimination based on age and gender" from Dr. Hoover. (Rec. Doc. 23 at 23).

The Defendant argues that the span in time between Dr. Hoover's disagreement with Plaintiff's position contained in her research paper and the presently alleged discriminatory action is far too attenuated to lend any credence to Plaintiff's argument that Dr. Hoover failed to promote Plaintiff due to his bias against her, generating from the research paper. We find Defendant's argument to be persuasive on this point. Even if Dr. Hoover did have an "animated and strong

15

disagreement" with the paper's topic and contents seven years ago, there is simply no evidence that indicates he was presently motivated to discriminate against Plaintiff based upon the contents of that research paper.  In fact, during the interim Dr. Hoover appointed Plaintiff to an acting Principal's position at the Blain School.  If Dr. Hoover still managed to harbor a discriminatory animus against Plaintiff based on a paper written seven years prior, we find it somewhat illogical that he would have promoted Plaintiff, even temporarily, to that or any other position.

Plaintiff essentially argues that Dr. Hoover controlled the hiring process because the individuals on the committee were subordinate to him.  She further alleges that the existence of prepared questions for the interviewees demonstrates Dr. Hoover's control over the interview process.  She submits that it is significant that Dr. Hoover discussed the open position with Mr. Rahn prior the interviews, had worked with him previously at Northern York School District, had encouraged Mr. Rahn to apply even though he would only be eligible for the Dean of Students position, and shared detailed favorable accounts of his interaction with Mr. Rahn with other committee members during their deliberations.

We cannot find that Dr. Hoover "manipulated" the hiring process by virtue of his position as Superintendent compared to his subordinates on the committee.  Hiring committees are generally comprised of individuals representing differing

16

tiers of "power."   The fact that one member of a hiring committee reports to

another does not, *ipso facto*, mean that any lower-level employee on a hiring

committee merely acts as a "rubber-stamp" to his or her superior.   Moreover, the

existence of a prepared question list for interviewees in no way evidences Dr.

Hoover having sole control of the process.  A checklist of questions is simply a

standard procedure used in the interviewing process.  Finally, and perhaps most

importantly, Plaintiff's reliance upon Dr. Hoover's alleged "favoritism" of Mr.

Rahn over her does not indicate any gender-based or age-based discriminatory

animus of Dr. Hoover.  Plaintiff's argument that Dr. Hoover preferred Mr. Rahn

and essentially "fixed" and manipulated the hiring process so he would be offered

the position is belied by certain facts.  Notably, Mr. Rahn was the *second* choice,

and only received the offer *after* Mr. Miller declined the position, indicating that

Dr. Hoover could not have manipulated or controlled the hiring process in a way

that favored Mr. Rahn in the first instance.[4]  If Dr. Hoover was "backing" Mr.

Rahn for the job before and during the process and controlled the outcome, as

Plaintiff alleges then it is entirely illogical that Mr. Rahn was first runner-up to Mr.

Miller when the offer was extended.  Furthermore, Plaintiff makes no showing that

---

[4] We note as well that there is no indication that Dr. Hoover was either a psychic or that
he possessed advance knowledge that Mr. Miller would decline the position.

Dr. Hoover's alleged preference for Mr. Rahn was based upon age or gender.  On the contrary, the fact that Dr. Hoover worked with  Mr. Rahn previously would militate against basing a preference for him as a candidate solely upon  facial attributes of age or gender.  Dr. Hoover's previous working relationship with Mr. Rahn would give Dr. Hoover a more informed preference, based upon their prior interactions, rather than a cursory preference based upon age or gender.

Plaintiff has essentially relied upon her now-discredited argument that Dr. Hoover controlled the process in a way that guided it to Mr. Rahn to bypass the need to establish that he and the other committee members acted in a discriminatory manner against her.  It is curious that Plaintiff takes issue with the fact that committee members executed identical affidavits stating that age or gender was not a factor in selecting a candidate, but during the discovery phase of this litigation, declined to depose the individual committee members to make a searching inquiry as to each individual's thoughts or decision process.  In sum, Plaintiff has made *no* showing that any of the committee members held a discriminatory bias against her based upon her age and/or gender.  In fact, the only evidence of record relating to the committee members is their affidavits, each of which states that they did not consider the candidates' age or gender in making their decisions.  Therefore, quite *unlike* <u>Willis</u>, there is no evidence in the record

that the Plaintiff's age or gender was discussed or considered, even in passing, during the deliberative process.

Finally, as Defendant points out, Dr. Hoover has previously promoted individuals in Plaintiff's protected class. Specifically, in 2003, Dr. Hoover offered the position of Assistant Superintendent to Dr. Bonnie Corneilius, a female in her late fifties. During his tenure as Superintendent of West Perry, Dr. Hoover has hired for seven administrative positions, four of which were given to females, and in his hiring capacity at Northern York County School District, Dr. Hoover awarded the last three positions he filled to females, even though males had applied for the jobs. (Rec. Doc. 2 at 26). We find that Dr. Hoover's past hiring conduct is strong and credible evidence tending to show that the legitimate reason articulated by the district was *not* a simple pretext for discrimination.

For the reasons stated above, our review of the record leads us to the necessary conclusion that Plaintiff has not established that the Defendant's articulated legitimate non-discriminatory reason for its decision not to promote her – her lack of secondary education experience – was a pretext for discrimination. Accordingly, we shall grant the Motion of the Defendant on all claims. An appropriate Order shall issue.

19

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge